EMERSON v. POWERS.

Contracts—Nursery Stock—Substantial Compliance.

> Judgment in nonjury case for plaintiff sellers of land for agreed amount of reimbursement for cost of removal of nursery stock located on the premises less what would have been sold had plaintiffs continued the business is not disturbed, where contract provided for payment by defendants of cost of removal of such stock as remained on the premises at a given date, notwithstanding plaintiffs did not continue the business and removed all of the stock before the date agreed, there having been substantial compliance by plaintiffs.

Appeal from Ingham; Salmon (Marvin J.), J. Submitted January 2, 1962. (Docket No. 6, Calendar No. 49,253.) Decided May 18, 1962.

Assumpsit by John D. Emerson and Irene P. Emerson against Arthur J. Powers, Robert C. Kirkpatrick and others for sums due on agreement to pay for moving nursery stock from land purchased. Judgment for plaintiffs. Defendants appeal. Affirmed.

*Glassen, Parr, Rhead & McLean* (*Roland F. Rhead,* of counsel), for plaintiffs.

*Hubbard, Fox, Thomas & Born* (*Donald G. Fox,* of counsel), for defendants.

References for Points in Headnote

12 Am Jur, Contracts § 343.

PER CURIAM. Plaintiffs sold defendants 5 acres of land on which they had operated a landscape nursery business. Upon delivery of the deed in February, 1959, the parties entered into a written agreement by which plaintiffs were to be compensated for their cost of removing from the land certain of the live nursery stock. The agreement provided:

"2. First parties shall have the further right and privilege to continue and carry on a normal nursery business operation upon said premises until June 15, 1959, and sell and dispose of the live inventory of small nursery stock thereon insofar as business conditions permit and warrant. Upon June 15, 1959, second parties agree to pay to first parties for the actual expense at that time connected with the removal of said live inventory then remaining from said premises to such other premises to which first parties' nursery will be moved; provided however, that second parties' obligations under this paragraph shall not exceed $2,000 per acre, nor cover more than 5 acres of land."

The quoted language was identical to language which had appeared in a supplemental agreement to a land contract executed in June of 1958, in the performance of which the deed was given and it was similar to language appearing in a 1957 option agreement between plaintiffs and defendants' assignor, the exercise of which resulted in execution of the land contract. Plaintiffs declared in a special count on the written agreements and in the common counts in assumpsit.

Plaintiffs did not exercise their privilege of carrying on their nursery business upon the premises until June 15, 1959, nor did they wait until that date to begin removal of their nursery stock. It appears from the evidence, as found by Judge Salmon before whom the case was tried without a jury, that they had completed removal of the stock before June

14th or 15th. Defendants denied plaintiffs' right to recover their actual cost of removal on the ground that the agreement obligated them to pay such removal costs only for nursery stock in the ground on June 15th.

Plaintiffs presented testimony indicating that it was their understanding they would be compensated for their costs of removal of all nursery stock in inventory at the time of execution of the land contract in June of 1958 and that they would have 12 months within which to remove it. Judge Salmon did not find the language ambiguous, for he concluded that the parties contemplated what the quoted clause provides: that the Emersons "would continue on the normal nursery business operation until June 15, 1959, and  *  *  *  the defendants then would stand the expense of moving whatever remained on the land at that time."

He concluded that notwithstanding removal of the nursery stock before the time specified, plaintiffs should be compensated for their expense of removal less, however, the cost of removing so much of the stock as the testimony showed normally would have been sold had plaintiffs continued the business. Judgment was entered in an amount so determined.

It seems clear to us that defendants bargained to pay for the cost of removal of the nursery stock, less what could be sold or otherwise disposed of in the operation of plaintiffs' business until June 15, 1959. Their agreement to do so was part of the price plaintiffs exacted for selling their land. There is nothing in this record to suggest that plaintiffs' continuation in business was contemplated to be a benefit to defendants other than to the extent plaintiffs thereby reduced the nursery stock which would have to be removed at defendants' expense. Indeed, plaintiffs were not obligated to remain in business on the

property, but had a right to do so if they so desired.*
Nor is there anything in this record to suggest that
removal of the nursery stock before June 15th in
any way deprived defendants of any benefit. In
fact, the record suggests that defendants were
anxious to have at least part of the land cleared of
nursery stock before that date. In short, defendants
may not be relieved of their obligation of payment
by insistence upon an unnecessarily rigid construc-
tion of contractual language in the face of what we
consider to have been substantial compliance by
plaintiffs.

Affirmed. Costs to plaintiffs.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVA-
NAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., con-
curred.

---

* The judgment entered reflects a reduction of plaintiffs' total
cost of removal by the cost of removing that nursery stock which
would have been sold had plaintiffs continued in business, thereby
avoiding placing any burden upon defendants as a result of plaintiffs'
decision not to continue the business.